UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK BETANCOURT,

        Plaintiff,

    v.

SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civil Action No. 23-3741 (CKK)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS................................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................................... ii

BACKGROUND ........................................................................................................................... 1

LEGAL STANDARD................................................................................................................... 2

ARGUMENT ................................................................................................................................. 4

       I.      The Agency Conducted a Reasonable Search for Responsive Records. ................ 4

      II.     From the Agency Records Released, the Agency Withheld Only Exempt
            Information. ................................................................................................................ 5

            A.     The Agency Properly Withheld Information Pursuant to Exemption 2. .... 5

            B.     The Agency Properly Withheld Information Pursuant to Exemption 5. .... 6

            C.     The Agency Properly Withheld Information Pursuant to Exemption 6 ..... 9

      III.    The Agency Released All Reasonably Segregable Information........................... 14

CONCLUSION............................................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Ctr. for Law & Just. v. NSA,*
    474 F. Supp. 3d 109 (D.D.C. 2020) .......................................................................... 11

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review,*
    830 F.3d 667 (D.C. Cir. 2016) .................................................................................. 11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ..................................................................................................... 2

*Armstrong v. Exec. Off. of the President,*
    97 F.3d 575 (D.C. Cir. 1996) .................................................................................... 14

*Brayton v. Off. of U.S. Trade Rep.,*
    641 F.3d 521 (D.C. Cir. 2011) .................................................................................... 3

*Brown v. Dep't of Just.,*
    724 F. Supp. 2d 126 (D.D.C. 2010) ............................................................................ 4

*Builders v. Norton,*
    309 F.3d 26 (D.C. Cir. 2002) ...................................................................................... 9

*Canning v. Dep't of Just.,*
    567 F. Supp. 2d 104 (D.D.C. 2008) .......................................................................... 14

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..................................................................................................... 2

*Citizens for Resp. & Ethics in Wash. v. Dep't of Labor,*
    78 F. Supp. 2d 77 (D.D.C. 2007) ................................................................................ 3

*Defenders of Wildlife v. Border Patrol,*
    623 F. Supp. 2d 83 (D.D.C. 2009) ........................................................................ 3, 4

*Dep't of State v. Wash. Post Co.,*
    456 U.S. 595 (1982) ................................................................................................... 10

*Dudman Commc'ns Corp v. Dep't of the Air Force,*
    815 F.2d 1565 (D.C. Cir. 1987) .................................................................................. 7

*EPA v. Mink,*
    410 U.S. 73 (1973) ....................................................................................................... 7

*Frugone v. CIA,*
    169 F.3d 772 (D.C. Cir. 1999) .................................................................................. 11

*Institute for Policy Studies v. CIA,*
    885 F. Supp. 2d 120 (D.D.C. 2012) ............................................................................ 6

*Judicial Watch v. Rossotti,*
    285 F. Supp. 2d 17 (D.D.C. 2003) .............................................................................. 4

*Judicial Watch, Inc. v. FDA,*
    449 F.3d 141 (D.C. Cir. 2006) .................................................................................... 9

*Kimberlin v. Dep't of Just.*,
   139 F.3d 944 (D.C. Cir. 1998) ................................................................. 11

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) .................................................................... 3

*Lead Industries Ass'n v. OSHA*,
   610 F.2d 70 (2nd Cir. 1979) ....................................................................... 7

*Leopold v. Dep't of Just.*,
   94 F.4th 33 (D.C. Cir. 2024) ..................................................................... 14

*Lepelletier v. FDIC*,
   164 F.3d 37 (D.C. Cir. 1999) ...................................................................... 9

*Machado Amadis v. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020) .................................................................... 8

*McGehee v. CIA.*,
   697 F.2d 1095 (D.C. Cir. 1983) .................................................................. 3

*Media Research Ctr. v. Dep't of Just.*,
   818 F. Supp. 2d 131 (D.D.C. 2011) ........................................................... 3

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) .................................................................... 5

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) .................................................................... 3

*Milner v. Dep't of the Navy*,
   562 U.S. 562 (2011) .................................................................................... 5

*Multi Ag Media LLC v. Dep't of Agric.*,
   515 F.3d 1224 (D.C. Cir. 2008). ................................................................ 9

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) .................................................................................. 12

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) .................................................................... 3

*Prison Legal News v. Samuels*,
   787 F.3d 1142 (D.C. Cir. 2015) .................................................................. 9

*Protect Our Defs. v. Dep't of Defense*,
   401 F. Supp. 3d 259 (D. Conn. 2019) ...................................................... 11

*Reporters Comm. for Freedom of Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ................................................................... 6, 7

*Rockwell Int'l Corp. v. Dep't of Just.*,
   235 F.3d 598 (D.C. Cir. 2001) .................................................................. 11

*SafeCard Servs., Inc., v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) .................................................................. 4

*Sussman v. Marshals Serv.*,
 494 F.3d 1106 (D.C. Cir. 2007) ................................................................ 14

*Tax Analysts v. IRS*,
 117 F.3d 607 (D.C. Cir. 1997) .................................................................. 4

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
 141 S. Ct. 777 (2021). ............................................................................... 7

*Valencia-Lucena v. Coast Guard*,
 180 F.3d 321 (D.C. Cir. 1999) .................................................................. 4

*Weisberg v. Dep't of Just.*,
 705 F.2d 1344 (D.C. Cir. 1983) ................................................................ 4

*Williams v. Ashcroft*,
 30 Fed. Appx. 5 (D.C. Cir. 2002) ............................................................. 5

**Statutes**

5 U.S.C. § 552(a)(3)(A) ................................................................................ 4

5 U.S.C. § 552(b) ......................................................................................... 14

5 U.S.C. § 552(b)(2) .................................................................................... 5

Defendant Social Security Administration ("Agency"), by and through the undersigned counsel, respectfully submits this Memorandum in Support of its Motion for Summary Judgment. For the reasons stated below, judgment should be entered in favor of Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure in this Freedom of Information Act ("FOIA") matter.

## BACKGROUND

Defendant respectfully refers the Court to the accompanying Statement of Material Facts Not in Genuine Dispute, ECF No. 15-2, for a complete statement of the factual background of this matter.

On February 23, 2023, Plaintiff submitted a FOIA request which sought the following records, in spreadsheet form:

> Hearings completion data from SSA's Case Processing and Management System, by name of individual administrative law judges (ALJ) for all ALJs in the Office of Hearings Operations, including the following information for each judge: [Judge (name), Hearing Office, Region, Total Dispositions, Total ALJ Dispositions Across All Offices, Decisions, Awards, Denials, Fully Favorable and Partially Favorable] for every calendar month beginning January 2006 until the present.

(hereinafter, "Hearing Data Request").  Decl. of Michelle L. Christ (July 5, 2024) ("Christ Decl.") ¶ 5, Ex. 1 (Hearing Data Request) (attached hereto as Ex. A).

The Agency, in good faith and at great effort, conducted a search reasonably calculated to uncover all relevant documents, located the specific data requested, and processed the Hearing Data Request.  *Id*. ¶¶ 10–1.  On April 19, 2024, the Agency responded to Plaintiff's request, releasing in full the requested data in two .xlsx files sorted by fiscal month for January 2006 through January 2024.  *Id*. ¶ 13, Ex. 8 (Response to Hearing Data Request).

On February 23, 2023, Plaintiff also submitted a FOIA request that sought the following records, in spreadsheet form:

> a copy of documents containing the following information . . . . : Records reflecting judge name, completion date and location (e.g. office or region) of all focused

reviews of which an administrative law judge was the subject, from January 2006
to the present.

(hereinafter, "Focused Review Request").  *Id*. ¶ 14, Ex. 9 (Focused Review Request).

The Agency, again in good faith and at great effort, conducted a search reasonably calculated to uncover all relevant documents, located all responsive records, and processed the Focused Review Request.  *Id*. ¶¶ 15–21.  On October 13, 2023, the Agency responded to Plaintiff's request, releasing in part the requested data in six columns.  *Id*. ¶¶ 22–4, Exs. 16 (Response to Focused Review Request); 17 (Focused Review Request).  The six columns were: (1) FR: the Agency's tracking number for a focused review; (2) Full Name: the name of the Administrative Law Judge ("ALJ"), who was the subject of the focused review; (3) Subject: the unique code assigned to an ALJ; (4) Office: the hearing office in which the ALJ is assigned at the time of a focused review; (5) Region: the region for the hearing office; and (6) Report Date: the completion date of the focused review.  *Id*. ¶ 23, Ex. 16.  The Agency withheld the Full Name and the Subject columns pursuant to Exemptions 2 and 6, and the Office and the Region columns pursuant to Exemption 6.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may

not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations.  *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot.  *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

### I.    The Agency Conducted a Reasonable Search for Responsive Records.

Under the FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs., Inc., v. SEC,* 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife*, 314 F. Supp. 2d at 8. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted).

A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Just.*, 724 F. Supp. 2d 126, 129 (D.D.C. 2010) (citation omitted). In responding to a FOIA request, an agency looks to the "reasonabl[e] descri[ption]" of the records sought. 5 U.S.C. § 552(a)(3)(A). That is, a professional agency employee familiar with the subject area must, in light of the FOIA request framed by the requestor, be able to locate the requested records with a "reasonable amount of effort." H.R. Rep. No. 93-876, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6271. The agency must be able to determine "precisely" which records are being requested. *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (citation and internal quotation marks omitted). The agency then is obligated to perform a "reasonable" search in response to the request framed by the requestor. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir.

1986).  An agency, however, is "not obligated to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk*, 73 F.3d at 389; *see also Williams v. Ashcroft*, 30 F. App'x 5, 6 (D.C. Cir. 2002) (agency need not look for records not sought in initial FOIA request).

Here, there is no material doubt that the Agency's search was reasonable.  For both requests, the Agency searched the relevant information systems and extracted the responsive records sought by Plaintiff.  Christ Decl. ¶¶ 13, 21.  For the Hearing Data Request, the Agency identified the exact information sought by Plaintiff, with the exception that it released the data by fiscal month instead of calendar month, to which approach Plaintiff agreed.  *Id*. ¶¶ 5, 10, 13.  For the Focused Review Request, the Agency identified the exact information sought by Plaintiff, with the exception that the data reflected information from 2011 onward (as opposed to 2006 onward as requested by Plaintiff) because the Agency did not begin collecting the responsive information data until 2011.  *Id*. ¶¶ 22–4.

In sum, the Agency conducted a reasonable search and found the responsive material.  The adequacy of the search is confirmed by Plaintiff's agreement to the manner of the search.  Therefore, the Court should grant summary judgment in favor of Defendant on the sufficiency of the search.

## II.  <u>From the Agency Records Released, the Agency Withheld Only Exempt Information.</u>

### A.  <u>The Agency Properly Withheld Information Pursuant to Exemption 2.</u>

Exemption 2 protects from disclosure information "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The Supreme Court's decision in *Milner v. Dep't of the Navy*, 562 U.S. 562 (2011), eliminated the distinction between "High 2" and "Low 2" exemptions.  *Id.*  at 570.  Thus, Exemption 2 "encompasses 'only records relating to issues of employee relations and human resources.'"  *Institute for Policy Studies v. CIA*, 885 F. Supp. 2d

120, 146 (D.D.C. 2012).   In *Milner*, the Supreme Court identified three criteria for FOIA
Exemption 2 to apply: (1) the information must be related to "personnel" rules and practices; (2)
the information must relate "solely" to those personnel rules and practices; and (3) the information
must be "internal."  *Milner,* 562 U.S. at 569-570 n.4.

Here, the Agency withheld ALJ codes.   Christ Decl. ¶ 36.[1]  First, the Agency assigns each
ALJ a code, which the Agency uses to refer to each ALJ.   *Id*.   Second, the Agency uses the ALJ
codes solely to identify ALJs.   *Id*.   Third, the Agency creates the ALJ code exclusively for internal
use, to enable Agency staff to refer to each ALJ.   *Id*.   Lastly, the Agency determined that the release
of the information may allow non-Agency persons to interfere with Agency internal practices and
would create unjustified burdens with respect to providing access to this information, in which the
public has no interest.  *Id*.

In sum, the Agency properly withheld ALJ codes.   Therefore, the Court should grant
summary judgment in favor of Defendant on whether the Agency properly withheld information
under Exemption 2.

**B.    The Agency Properly Withheld Information Pursuant to Exemption 5.**

Exemption 5 shields from disclosure records that are subject to the deliberative process
privilege—those "reflecting advisory opinions, recommendations and deliberations comprising
part of a process by which governmental decisions and policies are formulated."  *Reporters Comm.
for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021) (quotation marks omitted).  To
fall within the deliberative process's scope, a record must be "both predecisional and deliberative."

---

[1]     In his appeal, Plaintiff indicated that he did not challenge the Agency's withholding of the
ALJ codes pursuant to Exemption 2.  Christ Decl., Ex. 18 (Appeal Letter) at 2n.2 ("Mr. Betancourt
does not appeal the SSA's withholding of "ALJ employees codes" from the responsive
documents.").

*Id.* at 362.  A record "is predecisional if it was generated before the agency's final decision on the matter," and "is deliberative when it is prepared to help the agency formulate its position, and it reflects the give-and-take of the consultative process." *Id.* (cleaned up).  "There is considerable overlap between these two prongs because a document cannot be deliberative unless it is predecisional." *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021)..

The deliberative process privilege protects not only documents, but also the deliberative process itself.  *See, e.g.*, *Dudman Commc'ns Corp v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative processes – not to protect specific materials.").  Further, while the deliberative process does not "as a general matter, cover 'purely factual' material[s]," if "factual materials are 'inextricably intertwined' with policy making recommendations so that their disclosure would 'compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5," "the factual materials themselves fall within the exemption." *Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 85 (2nd Cir. 1979) (quoting *EPA v. Mink*, 410 U.S. 73, 92 (1973)).

The deliberative process privilege serves several important values.  It (1) "assures agency staff that they can provide their candid opinions and recommendations to decisionmakers without fear of ridicule or reprisal," (2) "protects policymakers from premature disclosure of their proposals before they have been completed or adopted," and (3) "guards against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Reporters Comm.*, 3 F.4th at 361 (quotation marks omitted).  Ultimately, the privilege "reflects the commonsense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options, as well as an understanding that employees would

be chilled from such rigorous deliberation if they feared it might become public." *Id.* at 362 (quotation marks omitted). "[E]xperience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances to the detriment of the decisionmaking process." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 150-51 (1975)) (internal quotation marks omitted).

Here, the Agency withheld ALJs' names, codes, office locations, and regions. Christ Decl. ¶ 33. The withheld information is closely held even within the Agency, disseminated on a need-to-know basis only. *Id.* at ¶¶ 29, 34; Decl. of Christopher Dillon (May 10, 2024). ¶ 13 (attached hereto as Ex. B). The selection of a particular ALJ for a focused review does not in itself establish that a policy non-compliance or other quality issue exists, but rather begins the deliberation into whether such an issue exists. *Id.* The Agency determined that disclosure of information regarding specific focused reviews would undermine its ability to candidly engage in the process in order to identify and address areas of concern. *Id.* Accordingly, the fact that a particular ALJ was selected for a focused review is both pre-decisional and deliberative in nature, and the identity of the subject is inextricably intertwined with the substantive contents of the review.

Further, the Agency determined that the public release of the information would result in several foreseeable harms: its release would (1) stifle candid communication and effective decision-making in the quality review context; (2) damage the overall deliberative process embedded in the focused review process, (3) generate confusion with respect to decisions or referral rationales that were subsequently clarified; (4) cause undue publication and speculation regarding the bases for, and outcomes of, focused quality referrals and reports; and (5) adversely affect ALJ productivity, due to, *e.g.*, concerns about being referred and the associated publicity

and speculation about whether a non-compliance or quality issue exists.  Dillon Decl. ¶ 14; Christ Decl. ¶¶ 34, 35.

In sum, the Agency properly withheld ALJ names, codes, office locations, and regions. Therefore, the Court should grant summary judgment in favor of Defendant on whether the Agency properly withheld information under Exemption 5.

### C.    The Agency Properly Withheld Information Pursuant to Exemption 6

Exemption 6 "is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (quotation marks omitted). It encompasses "detailed Government records on an individual which can be identified as applying to that individual," *Judicial Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1124 (D.C. Cir. 2004), and thus covers "not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy," *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (cleaned up).

"To apply exemption 6, a court must first determine whether disclosure would compromise a substantial, as opposed to a *de minimis,* privacy interest." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (internal quotation marks omitted).  The term "substantial," however, "in this context means less than it might seem"—only that the interest is more than *de minimis*.  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008).  If the records implicate a substantial privacy interest, a court balances any individual's rights of privacy against the public interest in disclosure.  *Id.*  "The only relevant public interest in [this] balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quotation marks omitted).

Here, the Agency properly withheld the ALJ's full name, employee code, office location, and region under FOIA Exemption 6.  Christ Decl. ¶ 23.

First, the information withheld constitutes personnel or similar files because the information relates to the Agency's focused review process.  Christ Decl. ¶ 26; Dillon Decl. ¶¶ 6–12.  Exemption 6 is not limited to a "narrow class of files containing a discrete kind of personal information."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  Rather, "[t]he exemption was intended to cover detailed Government records on an individual which can be identified as applying to that individual."  *Id.*, at 601-02 (citation omitted).  Here, the columns withheld constitute "personnel . . . and similar files," as they directly pertain to agency-employed ALJs who have been the subject of an internal quality review process.  Christ Decl. ¶ 26.

Second, the Agency determined that an ALJ who is subject to a focused review process has a substantial privacy interest and this interest is present for all the ALJs referenced in the responsive records SSA produced to Plaintiff.  Christ ¶ 26.  The focused review process is an internal quality review process of a referred ALJ's closed decisions to determine whether a policy compliance or quality issue exists, and these records are maintained in a Privacy Act-protected system of records.  *Id.* ¶¶ 26–7, 29.  An ALJ selected for focused review may undergo targeted training, mentoring, or other measures designed to improve the ALJ's hearings and decisions and bring them in line with program policies, and, while the process is aimed at improvement, failure to improve can lead to disciplinary action.  *Id.* ¶ 29.  Information such as this is undeniably sensitive, and there is a substantial privacy interest for all ALJs involved in not being publicly identified as having been the subject of a focused review, even though the focused review itself is not disciplinary.

To the extent an ALJ may be considered a senior or public figure within the Agency, Agency ALJs retain privacy interests.  Courts have consistently found that public figures do not forfeit all privacy rights, and "do not surrender all rights to personal privacy when they accept a public appointment."  *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998).  Further, courts have found that administrative judges, to include SSA ALJs, retain privacy rights that would need to be balanced against any public interest.  *Claudio v. SSA*, No. H-98-1911, 2000 WL 33379041, at *8-9 (S.D. Tex. May 24, 2000) (concluding that asserted public interest in the records related to an ALJ misconduct complaint is "not enough to overcome [the ALJ's] privacy interest in the confidentiality of the requested documents"); *Protect Our Defs. v. Dep't of Defense*, 401 F. Supp. 3d 259, 287 (D. Conn. 2019) (finding Staff Judge Advocates have a legitimate privacy interest in their identities); *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 675–76 (D.C. Cir. 2016) (recognizing need to weigh the privacy interests of immigration judges against the public interest in information about complaints).

Moreover, the prior public disclosure by the House Committee on Oversight and Government Reform of some focused review information does not diminish the privacy interests. The Agency released the information pursuant to a request from the Chair of the Committee.  Decl. of Suzanne Payne (May 1, 2024) ("Payne Decl.") ¶ 5(attached hereto as Ex. C); *see Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 604-05 (D.C. Cir. 2001) (confirming that no waiver occurred where agency provided congressional subcommittee with agency report).  And, although the Committee disclosed the information, "disclosures by members of Congress . . . are [] not official agency disclosures."  *Am. Ctr. for Law & Just. v. NSA*, 474 F. Supp. 3d 109, 122 (D.D.C. 2020) (citing *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999)).

Further underscoring this point, in producing the requested information to the Committee at such prior time, the Agency expressly and consistently maintained that the information needed to be protected and kept confidential; took extensive steps to protect the information in transit; and at no point gave Congress permission to include specific ALJ focused review information in a publicly available report.  Payne Decl. ¶¶ 6–8; Christ Decl. ¶ 28.  The Office of Legislation and Congressional Affairs' leadership expressed the Agency's extreme concern to the Committee concerning its decision to publish any information.  Payne Decl. ¶ 8; Christ Decl. ¶ 28.  Thus, the Committee's disclosure does not bear on the substantial privacy interests in the requested information.

Third, Plaintiff has identified no overriding public interest in the withheld material.  The identity of an ALJ who the Agency subjected to a focused review would not shed light on the Agency's operations.  The purpose of a focused review is to assist the Agency with policy and legal compliance.  Dillon Decl. ¶ 11.  The decision to review an ALJ's closed decisions is based on data, findings from pre-effectuation review, and internal or external sources.  *Id*. ¶ 8.  But the Agency decision to review an ALJ's closed decisions does not necessarily indicate the ALJ is non-complaint with policy or that there is an issue with the quality of the ALJ's decisions.  *Id*. ¶ 11.  In other words, the identifiers associated with specific ALJs who were subject to focused review would not shed light on the Agency's operations.  To the extent that Plaintiff may argue that focused reviews will shed light on a specific ALJ wrongdoing, the review is not designed to undercover wrongdoing, Dillon Decl. ¶¶ 10–2, and the Supreme Court has held that mere allegations of wrongdoing do not constitute a FOIA public interest that would outweigh an individual's privacy interests.  *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (concluding that substantial privacy interests in an employee termination letter are not

outweighed by mere allegations of misconduct, and explaining that the requester must establish more than a bare suspicion to support an overriding FOIA public interest).

Moreover, considering the Agency's focused reviews are regularly occurring and are internal quality reviews that are separate from any potential disciplinary or other personnel actions regarding specific ALJs, the Agency determined that all ALJs, both former and current, would have the same substantial privacy interests in their personal information.  Christ Decl. ¶ 31.  As explained by the Agency's Office of Hearing Operations, the selection for a focused review is a complex multifactorial process that helps the Agency determine whether there may be policy or quality concerns and a referral for a focused review does not necessarily indicate non-compliance or any quality issues.  *Id*.  Further, the Agency found that this interest, when weighed against the lack of articulated public interest in this information, would weigh in favor of withholding under the Exemption 6 balancing test.  *Id*.  Given that the existence of focused reviews–whether one or many–does not equate to the actual existence of quality issues or eventual discipline if the ALJ's performance does not improve if quality issues are identified, the Agency has not independently identified any public interest in the identity of ALJs involved that would help inform the public about what the government is up to.  *Id*.

Fourth, after carefully considering whether ALJ full name, employee code, office location, and region could be released, in whole or in part, the Agency determined that the public release of the information would result in several foreseeable harms, including: (1) undue publicity that an ALJ has been referred for what might have been a suspected policy noncompliance or quality issue; (2) undue publicity regarding speculation that an ALJ failed to improve after a focused review and was subjected to disciplinary action; and (3) adverse effects on ALJ productivity, due to, *e.g.*, concerns about being referred for a focused review and the associated publicity and/or

speculation about the non-compliance or quality issues for why a particular ALJ was referred, and (4) exposure to being personally contacted or harassed by Plaintiff or other members of the public. Dillon Decl. ¶ 14; Christ Decl. ¶ 30.

In sum, the Agency properly withheld the columns for ALJ's full name, employee code, office location, and region, as these withholdings were collectively necessary in order to prevent the ALJs' identification. Therefore, the Court should grant summary judgment in favor of Defendant on whether the Agency properly withheld information under Exemption 6.

III. **The Agency Released All Reasonably Segregable Information.**

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 260, (D.C. Cir. 1977).

To establish that all reasonably segregable, nonexempt information has been disclosed, an agency must show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). The agency also "must specifically and thoughtfully" consider whether otherwise exempt information can be released without foreseeable harm to the interests protected by the particular exemption. *Leopold v. Dep't of Just.*, 94 F.4th 33, 37–38 (D.C. Cir. 2024). Nonetheless, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

For the focused review request, the Agency conducted a segregability analysis, considering whether any of the information was not exempt and could be disclosed, as well as whether any

exempt information could be released and the harms associated with the release, prior to determining that the records should be withheld in part.  Christ Decl. ¶¶ 24, 26–7, 29, 34, 36.[2]  The Agency determined that the focused review tracking number as well as the focused review report date information was not exempt and released this information.  *Id*. ¶¶ 23–4.  However, as detailed above, the Agency determined that the ALJ names, codes, office locations, and regions were exempt, and that none of the exempt information could be released.  *Id*. ¶¶ 24, 26–7, 29, 34, 36.  For the identities of the ALJs, whether current or former, the Agency identified significant privacy interests in not having these individuals publicly identified, to include a general privacy interest in performance feedback, speculation about job performance, the pre-decisional nature of an individual being referred or selected for a focused review, and preventing ALJs or former ALJs from being personally contacted or harassed.  *See id*. ¶¶ 30, 32, 34.  With regard to the remaining information, ALJ codes, office, or region, the Agency identified concerns that such data could be used in conjunction with other publicly available data, including data provided in response to the hearing disposition data request, to ascertain an ALJ or former ALJ's identity.  *Id*.  The Agency also concluded that the foreseeable harms that prevented it from releasing the information in the first instance due to the principles articulated concerning the exemptions applied also prevented it from further release of any segregable information.  *Id*. ¶ 32.

As such, the Agency released all reasonably segregable information, being cognizant of its duty to do so and to release whatever it can where there is no foreseeable harm.  Therefore, the Court should grant summary judgment in favor of Defendant as to whether the Agency released all reasonably segregable information.

---

[2]   The Agency released in full the records responsive to the Hearing Data Request so segregability is not at issue for that request.

**CONCLUSION**

For the foregoing reasons, Defendant should be granted summary judgment.

Dated:  July 10, 2024                           Respectfully submitted,
      Washington, DC

                                            MATTHEW M. GRAVES, D.C. Bar #481052
                                            United States Attorney

                                            BRIAN P. HUDAK
                                            Chief, Civil Division

By:         */s/ Joseph F. Carilli, Jr.*
                                              JOSEPH F. CARILLI, JR.
                                            Assistant United States Attorney
                                            601 D Street, NW
                                            Washington, DC 20530
                                            (202) 252-2525

                                            *Counsel for the United States of America*